B. J. McGARRY v. THE STATE.

No. 4753.    Decided January 23, 1918.

**1.—Burglary—Insufficiency of Evidence—Finger Prints.**

Where, upon trial of burglary, there was no evidence identifying the property which was alleged to have been stolen and found in possession of the defendant, and there was no other evidence, except certain finger prints found upon a window, which were identified by an expert as identical with the finger prints made by the defendant on a piece of paper after his arrest, but the window was so situated so as to make it accessible to the general public, and there were other finger prints upon the window pane, etc., the evidence was insufficient to support the verdict.

**2.—Same—Evidence—Registering at Hotel—Identity.**

Where, upon trial of burglary, the evidence was entirely circumstantial, there was no error in admitting testimony that the defendant registered under a certain name at a certain hotel as res gestae of his identification at the time and place mentioned.

**3.—Same—Evidence—Finger Prints—Bill of Rights.**

Upon trial of burglary where the evidence was entirely circumstantial, there was no error in permitting the State to prove that defendant, after his arrest, made finger prints upon a paper to be compared with finger prints found upon a window pane of the house alleged to have been burglarized, and this was not violative of the Bill of Rights, providing that an accused is not required to give evidence against himself. Following Pitts v. State, 60 Texas Crim. Rep., 524, and other cases.

**4.—Same—Evidence—Character of Defendant.**

Upon trial of burglary depending upon circumstantial evidence, it was improper to introduce in evidence the documents found in the book or wallet belonging to defendant, which constituted certificates that the name under which he went was a deaf mute worthy of assistance, etc.

**5.—Same—Evidence—Finger Prints—Expert Testimony.**

Where, upon trial of burglary depending upon circumstantial evidence, certain finger prints were found on a window pane of the alleged burglarized house, there was no error in permitting the part of the window, on which there were finger prints, and the paper upon which the defendant had made finger prints, to be taken to an expert on finger prints, who testified in detail, as to his study of an inquiry into the subject of finger prints as a means of identification, the witness having qualified as an expert on the subject. Following People v. Jennings, 252 Ill., 534.

Appeal from the District Court of Milam. Tried below before the Hon. John Watson.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Robt. M. Lyles, J. F. Cunningham,* and *U. S. Hearrell,* for appellant. —Upon insufficiency of the evidence: Clifton v. State, 39 Texas Crim. Rep., 619; Munson v. State, 34 id., 498; Meyers v. State, 14 id., 35; Walker v. State, 7 id., 245; Warren v. State, 52 Texas Crim. Rep., 218, 106 S. W. Rep., 132; Tollett v. State, 44 Texas, 95.

On question of identification: Gill v. State, 36 Texas Crim. Rep., 589.

On question of identification by finger prints: Scott v. State, 3 Texas Crim. App., 103; Butler v. State, 3 id., 48; Miller v. State, 18 id., 34.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appeal is from a conviction of burglary. The depot office at Rockdale was burglarized on the 28th of November, entry having been made by breaking a window glass from the outside and unfastening the door from the inside. The safe was opened and some forty odd dollars withdrawn. The appellant was a stranger in the community; was shown to have been in the town of Rockdale on the day before and the day after the burglary. He left a package in a store on the day before the burglary and called for it the following day. It contained some papers, which were subsequently introduced in evidence, which papers were letters written certifying that J. J. Wilson was a deaf-mute and other memoranda. He registered at a hotel, signing the register J. J. Wilson, claiming to be a mute. The burglary took place about between 6 and 7 o'clock in the evening. There was evidence that appellant and two other persons with him went on the train from Rockdale to Cameron, a short distance, on the night of the burglary after it occurred, and that appellant returned to Rockdale on a train the morn-

ing following and was arrested when he started to leave on the train the same day. He changed a $10 bill at Cameron, but there was no evidence identifying it with the money stolen. He was found in possession of none of the stolen property. The evidence mentioned was practically all that was contained in the record, except that there was evidence that upon one of the window panes of the window that was broken there were finger prints which were identified by expert testimony as identical with finger prints made by appellant on a piece of paper after his arrest. The evidence showed that there were other finger prints upon the window pane and it was not practicable to tell when and by whom these were made, and when those claimed to have been made by appellant were placed upon the window. The window was situated so as to make it accessible to the general public, at a public place, and we regard the evidence insufficient to support the verdict.

The fact that appellant was in the town at the time of the burglary and that he made finger prints upon the window is not inconsistent with his innocence, nor does it, with the other testimony, fulfill the legal measure of circumstantial evidence.

The contention that there was error in the proof that appellant registered under the name of J. J. Wilson, and claimed to be a mute, we think, is not sound. It was introduced in connection with his identity as having been in the vicinity of the scene of the crime at the time in question and does not, we think, come within the purview of the law which prohibits the State to attack the character of the accused. Such color as it threw upon his character was legitimately incidental to, and res gestae of, his identification at the time and place mentioned.

The proposition that there was error in permitting the State to prove that appellant after his arrest made finger prints upon a paper was violative of the Bill of Rights providing that an accused was not required to give evidence against himself, is, we think, untenable. The point in principle, we think, is decided against appellant in the opinon of this court in Pitts v. State, 60 Texas Crim. Rep., 524, wherein it was held, Judge Ramsey writing the opinion, that evidence of footprints made under a similar circumstance was not to be rejected, and in which he reviewed various decisions to this effect, beginning with Walker v. State, 7 Texas Crim. App., 245. These authorities and others will be found collated in Harris' Constitution, Ann., p. 95, note 86.

The documents found in the book or wallet belonging to appellant, which constituted certificates that J. J. Wilson was a deaf mute and worthy of assistance, and data connected therewith, we think, were improperly received in evidence.

The part of the window on which there were finger prints and the paper upon which appellant had made finger prints were taken to an expert, who testified in detail as to his study of and inquiry into the subject of finger prints as a means of identification. He claimed to have been engaged in that character of work for ten years, and to have

made a close study of it in various places, and to be able by comparison of enlarged photographs of finger prints to determine questions of identity, claiming that it furnished an accurate means thereof; that he was skilled in the photographic process necessary to enlarge and develop them, and that a comparison of some of the finger prints upon the window and those on the paper, which were admittedly made by the appellant, showed that they were made by the same person. This testimony was objected to upon various grounds. No precedents in this State have been cited or found touching the admissibility of this character of testimony. The Supreme Court of Illinois, in the case of People v. Jennings, 252 Ill., 534, 96 N. E. Rep., 1077, considered the subject, and in view of its novelty in this State we reproduce the statement of conclusions reached by that court, omitting the evidence showing the qualification of the witnesses, with the remark that the witness who testified in the instant case gave testimony showing his knowledge of the subject quite as fully as that detailed by the witnesses in the case mentioned, from which case we quote as follows:

"It is further insisted in this connection by plaintiff in error that the evidence of Halsted, Mrs. McNabb, and Miss McNabb was inadmissible because of the uncertain character of the identification. A great deal has been written and said in the past concerning the doubtful nature of testimony identifying persons. Men's faces, like their handwriting, may be so similar that the keenest observer may be baffled in seeking to discover differences. 'The witness,' says Wharton, 'is asked how he knows that the prisoner at the bar is the person who fired the fatal shot, and his answer is, 'I infer it from a similarity of eyes, of hair, of height, of manner, of expression, of dress. Human identity, therefore, is an inference drawn from a series of facts, some of them veiled, it may be, by disguise and all of them more or less varied by circumstances.' Wharton on Crim. Evidence (8th ed.), sec. 13. In his charge to the jury in the Tichborne case Lord Cockburn said: 'Frequently a man is sworn to who has been seen only for a moment. A man stops you on the road, puts a pistol to your head, and robs you of your watch or purse; a man seizes you by the throat, and while you are half strangled his confederates rifle your pockets; a burglar invades your house by night, and you have only a rapid glance to enable you to know his features. In all these cases the opportunity of observing is so brief that mistake is possible, and yet the lives and safety of people would not be secure unless we acted on the recollection of features so acquired and so retained, and it is done every day.' Wharton on Crim. Evidence (8th ed.), sec. 803, note; Jones on Evidence (2nd ed.), sec. 361. In Ogden v. People, 134 Ill., 599, 25 N. E. Rep., 755, the accused was charged with robbery. On the trial one Martin and his wife and daughter, who had known the accused for ten years, testified that he came to their house at night with his face wrapped in red flannel and ordered them to deliver up their money. They testified positively to

his identification, recognizing his voice. The court held the testimony competent, and affirmed the judgment. It has been frequently held that a witness may testify to a person's identity from his voice or from observing his stature, complexion, or other marks. See 1 Widmore on Evidence, sec. 660, and authorities cited in note 1; State v. Lytle, 117 N. C., 799, 23 S. E. Rep., 476. This testimony was competent. The weight to be given it was a question for the jury, in view of all the other circumstances and evidence in the case.

"It is further contended that the evidence as to the comparison of photographs of the finger marks on the railing with the enlarged prints of plaintiff in error was improperly admitted. No question is raised as to the accuracy of the photographic exhibits, the method of identifying the photographs, the taking of the finger prints of the plaintiff in error or the correctness of the enlargements, as shown by the exhibits introduced in evidence. It is earnestly insisted, however, that this class of testimony is not admissible under the common law rules of evidence, and as there is no statute in this State authorizing it the court should have refused to permit its introduction. No case in which this question has been raised has been cited in the briefs, and we find no statute or decisions touching the point in this country. This class of evidence is admitted in Great Britain. In 1909 the Court of Criminal Appeals held that finger prints might be received in evidence, and refused to interfere with a conviction below, though this evidence was the sole ground of identification. In re Castleton's case, 3 Texas Crim. App., 74. While the courts of this country do not appear to have had occasion to pass on the question, standard authorities on scientific subjects discuss the use of finger prints as a system of identification, concluding that experience has shown it to be reliable. 10 Ency. Britannica (11th ed.), 376; 5 Nelson's Ency., 28. See, also, Gross' Crim. Investigation (Adams' Transl.) Osborn's Questioned Documents, 479. These authorities state that this system of identification is of very ancient origin, having been used in Egypt when the impression of the monarch's thumb was used as his sign manual, that it has been used in the courts of India for many years and more recently in the courts of several European countries; that in recent years its use has become very general by the police departments of the large cities of this country and Europe; that the great success of the system in England, where it has been used since 1891, in thousands of cases without error, caused the sending of an investigation commission from the United States, on whose favorable report a bureau was established by the United States government in the war and other departments. . . .

"When photography was first introduced it was seriously questioned whether pictures thus created could properly be introduced in evidence, but this method of proof, as well as by means of X-rays and the microscope, is now admitted without question. Wharton on Crim. Evidence (8th ed.), sec. 544; 1 Widmore on Evidence, sec. 795; Rogers on Expert

Testimony (2nd ed.), sec. 140; Jones on Evidence (2nd ed.), sec. 581. We are disposed to hold from the evidence of the four witnesses who testified, and from the writings we have referred to on this subject, that there is a scientific basis for the system of finger print identification, and that the courts are justified in admitting this class of evidence; that this method of identification is in such general and common use that the courts can not refuse to take judicial cognizance of it. Such evidence may or may not be of independent strength, but it is admissible, the same as other proof, as tending to make out a case. If inferences as to the identity of persons based on the voice, the appearance, or age are admissible, why does not this record justify the admission of this finger print testimony under common law rules of evidence? The general rule is that whatever tends to prove any material fact is relevant and competent. People v. Gray, 251 Ill., 431, 96 N. E. Rep., 268; Thayer's Prelim. Treaties on Evidence at Common Law (1898 ed.), 226. Testimony as to footprints has frequently been held admissible. Wharton on Crim. Evidence (8th ed.), sec. 796; 1 Widmore on Evidence, sec. 413; State v. Fuller, 34 Mont., 12, 85 Pac. Rep., 369; 8 L. R. A. (N. S.), 762, 9 Am. & Eng. Ann. Cas., 648, and note. In Carlton v. People, 150 Ill., 181, 37 N. E. Rep., 244, 41 Am. St. Rep., 346, on a trial for arson, evidence of footprints near or leading to a barn and their correspondence with the feet of the accused was held competent. It was also proved that the accused was lame and walked with a kind of hop, and that the foot he limped on corresponded to the irregular tracks in the field. See Jones on Evidence (2nd ed.), sec. 400; 1 Widmore on Evidence, sec. 660, and note 2; State v. Ah Chuey, 14 Nev., 79, 33 Am. Rep., 530, and note; Commonwealth v. Pope, 103 Mass., 440.

"It is further insisted, as we understand the briefs and oral argument, that expert testimony on this subject was not permissible. Expert testimony is admissible when the subject matter of the inquiry is of such a character that only persons of skill and experience in it are capable of forming a correct judgment as to any facts connected therewith. Yarber v. Chicago & Alton Railway Co., 235 Ill., 589, 85 N. E. Rep., 928. It is an elementary rule that where the court or jury can make their own deductions they shall not be made by those testifying. Evans v. People, 12 Mich., 27. Expert evidence is not confined to classed and specified professions, but is applicable wherever peculiar skill and judgment applied to a particular subject are required to explain results or to trace them to their causes. McFadden v. Murdock, I Ir. Rep., k867, G. L. 211. Expert evidence is admissible when the witnesses offered as experts have peculiar knowledge or experience not common to the world, which renders their opinions, founded on such knowledge or experience, an aid to the court or jury in determining the questions at issue. Taylor v. Monroe, 43 Conn., 36; Ellingwood v. Bragg, 52 N. H., 488; Rogers on Expert Testimony (2nd ed.), sec. 6;

1 Greenleaf on Evidence (Lewis' ed.), sec. 280, and authorities cited.

"From the evidence in this record we are disposed to hold that the classification of finger print impressions and their method of identification is a science requiring study. While some of the reasons which guide an expert to his conclusions are such as may be weighed by any intelligent person with good eyesight from such exhibits as we have here in the record, after being pointed out to him by one versed in the study of finger prints, the evidence in question does not come within the common experience of all men of common education in the ordinary walks of life, and, therefore, the court and jury were properly aided by witnesses of peculiar and special experience on this subject."

We conclude that the evidence of the witness was admissible.

Such other questions as are likely to arise upon another trial, if one should be had, have been examined and found not to present reversible error.

For the reasons detailed hereinabove the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*