### GEORGE HAMILTON V. THE STATE.

No. 17843.   Delivered January 15, 1936.
State's Rehearing Granted June 10, 1936.
Defendant's Rehearing Denied October 14, 1936.

The opinion states the case.

*Frank Judkins,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, *(Ben J. Dean,* District Attorney, of Breckenridge, of counsel), for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of theft of property over the value of fifty ($50.00) dollars, and his punishment was assessed at confinement in the state penitentiary for a term of three years.

Appellant's only contention is that the testimony adduced by the State, which is wholly circumstantial, is insufficient to sustain his conviction. In order to determine this question we will briefly relate salient criminative facts upon which the State relied for conviction.

The testimony shows that on the night of December 31, 1934, soon after midnight someone entered the granary of Albert Wagley and took therefrom approximately one hundred bushels of oats. Wagley discovered the loss of his oats the next morning and immediately began an investigation with a view of apprehending the culprit. He found some human tracks and tracks of a truck with dual wheels on the rear axle. The tires on the inside wheels appeared to be old and worn, while the tires on the outside wheels appeared to be new. He also found where someone had struck a mesquite tree standing near his granary and scraped some bark from it. He further found that appellant sold one hundred fifty-two bushels of oats in the city of Fort Worth on the following day. Wagley testified that he measured the tires on appellant's truck with a stick and the measurements of the tires corresponded with the tracks made by a truck at his granary; that some four or five days later he took some bark from a bolt which protruded from a standard on the side of appellant's truck; that this bark was about two inches long and about one half inch wide; that Hill, the constable, fitted the bark into the place where it had

been pulled from said tree and that it fitted exactly. Mr. Hill, the constable, testified that he took the bark from the top of a truck standing on Will Parrish's place in the town of Ranger; that they measured the piece of bark and in his judgment, according to the measurements, it corresponded with the place where bark had been knocked from the tree. This, in substance, constitutes the State's entire testimony upon which the conviction is based.

The appellant's defense was that of an alibi in support of which he proved by two disinterested persons that he loaded oats out of his own granary on to one of his trucks late in the afternoon of December 31, 1934, which he said he was preparing to haul to Fort Worth. He proved by another person, who owned and operated a cafe at Mineral Wells, that he, his son, and his son's wife came into the cafe at about eight thirty p. m. December 31st and bought some beer and sandwiches; that appellant took two bottles of beer with him and agreed to return the bottles which he did the next day and received a rebate. This witness further testified that he knew it was on December 31st because his beer license expired on that day and he did not have his place of business open on the 1st day of January. Mrs. Sandifer, who owned and ran a rooming house in the city of Fort Worth, testified that on the night of December 31st the appellant, his son, and his son's wife engaged a room at her place of business and immediately retired for the night; that the next morning about eight thirty they came down and left. The reason she remembered that it was the 31st of December was because they shot fireworks that night. Other testimony of like character was introduced by him which we deem unnecessary to relate here.

It is apparent that the State's case rests entirely upon the following circumstances: first, the sale of oats by the appellant upon January 1st; second, the tracks at Wagley's granary; and third, the piece of bark from a tree. The human tracks found about the granary were not by measurement, comparison, or otherwise identified as identical or similar to any tracks made by appellant, his son, or daughter-in-law. Hence the same are of no probative force. The tracks made by a truck, which according to measurements, were similar in size to those made by appellant's truck are also of little, if any, probative force inasmuch as the State's testimony shows that there were many trucks with dual wheels in that vicinity carrying tires of the same kind and size. The oats which appellant sold were not identified as any of the oats belonging to Wagley. With

reference to the State's main and strongest criminative circumstance the witnesses differed as to where they found the piece of bark and how they determind it was knocked from a tree at Wagley's granary. Wagley testified that he took the bark from a protruding bolt on the side of appellant's truck which Hill, the constable, fitted into the place on the tree; while the constable testified that he took the piece of bark from the top of a truck at Will Parrish's place in the town of Ranger; that they measured it and in his best judgment, according to the measurements, it fitted into the knocked off place on the tree. This leads a searching mind into the realm of uncertainty rather than to a definite conclusion. It is a well established rule that the circumstances relied on by the State in order to warrant a conviction must not only coincide with, account for, and therefore render probable the guilt of the defendant; but they must exclude every reasonable hypothesis except that of the defendant's guilt. It is not enough that it appear that the offense has been committed, but there should be proof tending to establish that the party charged was the person who committed it, or was a participant in its commission to a degree of certainty stronger than a mere probability or strong suspicion. See Warren v. State, 52 Texas Crim. Rep., 218; Graves v. State, 43 S. W. (2d) 953; McGarry v. State, 200 S. W., 527; Moreno v. State, 21 S. W., 924.

Having reached the conclusion that the evidence does not measure up to the requirements of the law the judgment of the trial court is reversed and the cause is remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—Upon original submission, we were somewhat doubtful whether the evidence showed that the oats sold by appellant the day following the theft corresponded substantially with the quantity of oats stolen. The State's written argument in support of its motion for rehearing directs our attention to certain parts of the testimony which in large measure clears the question up.

Albert Wagley, the owner of the stolen oats, testified on direct examination that the amount of oats taken were "approximately one hundred bushels * * * I do not know the exact measurement of the amount of oats taken, but I knew what was put in there (oat bin) at the beginning * * *."

On cross-examination he testified:

"I don't know exactly how many oats I had in the granary; they were loose; the granary was about ten by fourteen; I guessed the amount lost by the size of the hole. No, I did not have a thousand bushels, nor seven hundred bushels; it was a little rise of two hundred bushels; I guessed the amount lost to be about a hundred bushels; or maybe a little more; that is what I guessed when I first rode up there; I have figured out what was in there and what was lost, and a hundred and fifty bushels would be about right, it just left fifty bushels in the granary. Yes, I estimate that I lost a hundred and fifty bushels, by the hole in the oats.

Paul Wagley, a son of Albert Wagley, testified as follows regarding the oats stolen.

"* * * Three hundred and seventy-one bushels of oats were put into this bin originally, and one tenth was taken out for threshing; the one tenth came off of the three hundred and seventy-one bushels. Out of that, I suppose ninety acres of oats had been sowed; somewhere in that neighborhood; we tried to sow one bushel and a half to the acre. Before the oats were stolen, about a hundred and seventy-five bushels were left, around that; after that, there was left about five or six inches deep on the floor, or about forty or fifty bushels; I figured up the amount of oats put in there, and the amount sowed, and determined the best I could about how many were taken; about a hundred and fifty bushels were taken."

The evidence mentioned seems to establish with reasonable certainty that about 150 bushels of oats were taken from the bin at the time of the theft. The evidence further shows that appellant sold in Fort Worth the day following the theft 152 bushels of oats. The conclusion is reasonable that the amount of oats stolen from Wagley and the amount sold by appellant was approximately the same. This circumstance was entitled to some weight with the jury in connection with other circumstances proven.

In regard to the effort to identify the truck which hauled the oats away by comparison of tracks, we say in passing that usually such evidence is unsatisfactory and inconclusive as are human tracks unless there be present some distinctive identifying marks. The fact that the tracks of the truck at the granary and the casing on appellant's truck corresponded in a general way was a circumstance to be considered by the jury, but in our judgment—as said in our original opinion—was without much probative force. For the latest expression on

the subject, see Ennox v. State, No. 18,186, opinion of date May 13, 1936 (130 Texas Crim. Rep., 328) in which many authorities are cited.

We now come to further consider a circumstance most strongly criminative against appellant, and which we believe was not given its due weight originally because we were under the impression that the State's evidence upon the point was in conflict. We are now lead to think the conflict was more apparent than real, and that the witnesses were referring to the same incident. The matter in mind is the fact of finding upon a truck which belonged to appellant a small piece of bark from a mesquite tree—an apparently insignificant circumstance —yet "trifles thin as air are * * * confirmations strong as proofs of holy writ" when properly proven and connected. The conclusion is inescapable that the truck employed to haul away the stolen oats, in turning near the granary passed under a leaning mesquite tree, and that some part of the truck cut into the tree seven or eight feet from the ground and scraped away a piece of bark. The evidence showed that a truck belonging to appellant had some bolts which protruded through the standards near the top of the bed of the truck, and a washer on one of these bolts was not level. For some reason—not disclosed from the record—as soon as Albert Wagley discovered the loss of his oats he went immediately to appellant's house in Ranger and there examined the casings on appellant's truck, and also discovered on one of the standard bolts a piece of bark from a tree. As we understand the record the bark was not taken by him then but was gotten later from the truck while it was standing on a street in Ranger, and at a time when Mr. Hill, the constable, was present, as was also Paul Wagley. Albert Wagley testified as follows about the bark:

"The tracks of the truck passed under a tree, and there was a piece of bark gone from that tree and Mr. Hill fitted that piece of bark (which was taken from appellant's truck) into the place on the tree, and it did fit into the place."

He further testified that he took a piece of bark from the front standard of appellant's truck and that was the piece of bark that fit in the tree that the truck passed under. On cross-examination he testified:

"This piece of bark was found on the truck—a piece of bark peeled from a tree at my place; the piece of bark was about two inches long and a little better than a half inch wide. * * * I found this piece of bark on a truck at Ranger. No,

it was not on the main street; I saw it there, *but when we took it off* it was parked across the street from the feed store."

Mr. Hill testified on direct examination:

"We found a piece of mesquite limb on that truck, and took it off; we went to Mr. Wagley's house on Sunday following; I went to Mr. Wagley's house on Sunday, and looked at the tracks at the barn, and also looked at a stooping tree there; eight feet above the ground there was a hole cut into the tree, we measured that piece of bark there, and it fit in the place where it was cut into the tree exactly, as near as I could tell. I did not look at this truck at the defendant' house; I looked at it there on East Main and Oak Streets, and thought that he lived there at the time, I did not know any different, it was sixty feet from Oak Street, on Main."

On cross-examination, he said:

"This bark was up on the top, and I stood on the curb and took it off and gave it to Mr. Wagley * * * we measured it, and it fit that place."

Paul Wagley testified upon the point at issue on direct examination as follows:

"I examined the tree where a truck had gone under and knocked off some of the bark; I saw him (Mr. Hill) take that piece of bark off of the truck. With reference to the standards on the truck, and whether the front bolt was more blunt than the back bolt—it appeared to be long where it scraped. I saw them measure the piece of bark that was pulled off of that tree, and saw it put back in place and it fit."

On cross-examination he said:

"That piece of bark that was knocked off the mesquite tree, I judge it was knocked off about seven feet from the ground. Yes, I examined the truck that we saw in Ranger; the top of the sideboard was seven feet high; these bolts were just a short distance from the top; an inch and a half would be my guess; * * *"

This telltale bark seems to point unerringly to the fact that it was appellant's truck that hauled the stolen oats away from the granary, and the fact that on the next day appellant sold a load of oats corresponding in amount with those stolen points the finger of guilt at appellant so conclusively that we believe it excludes every reasonable hypothesis save that of appellant's guilt.

There is one other circumstance proven by the State that is difficult to explain in consonance with appellant's innocence. "It is elementary that efforts of a defendant to manufacture

evidence, or to procure false testimony * * * may be shown as indicating a consciousness of guilt." 18 Tex. Jur., Sec. 26, p. 45; Faulkner v. State, 104 Texas Crim. Rep., 378, 283 S. W., 824; Springer v. State, 102 Texas Crim. Rep., 604, 278 S. W., 1104; Hodges v. State, 108 Texas Crim. Rep., 210, 299 S. W., 907. Application of the foregoing principle here comes from the circumstance testified to by the witness Carwile to the effect that after appellant had been arrested and given bond upon the charge of stealing the oats from Mr. Wagley appellant made an effort to get witness to swear that he saw appellant buy this grain, and that witness refused to so swear because he had not seen appellant buy any oats. Upon being asked if appellant was trying to get witness to swear a lie he answered that if he had sworn as appellant desired him to, it would have been a lie.

Upon a further examination and closer analysis of the facts we have concluded that we were in error in originally ordering a reversal, hence the State's motion for rehearing is granted, the judgment of reversal is set aside, and the judgment of the trial court is now affirmed.

*Affirmed.*

### ON DEFENDANT'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In his motion for rehearing appellant strongly argues and urges that by a number of witnesses he put before the jury facts which, if true, would not be compatible with the State's theory of guilt. These facts he sets out at some length. In our opinion of affirmance we set out the facts relied on by the State. In passing, we observe that all the facts have been again examined and analyzed.

There would seem no escape from the conclusion that the party who drove the truck which made the track under the leaning mesquite tree near Wagley's granary, on the night the oats were taken, was the thief who got them. The place on said tree from which a two-inch piece of bark was torn that night was seven feet from the ground. The top of the standards of appellant's truck,—where was found the piece of bark which three men saw fitted into the barked place on said tree, and into which all three men swore said piece did fit,—was seven feet from the ground. These facts with others are substantially set out in our original opinion.

Reconciliation of conflicting facts is peculiarly a question for the jury, and regardless of the private opinion of anyone or all the members of this court, if there be apparently credible

testimony enough to support a conviction, we would not be willing to order a reversal simply because more witnesses testified to exculpatory facts than to those criminating. No facts appear in this record indicating or capable of creating feeling or prejudice against the accused. No suggestion of unfairness on the part of the jury appears. The testimony for the State, if true, supported the judgment. We can not say that the conviction was without sufficient testimony.

The motion for rehearing is overruled.

*Overruled.*