**Solomon RIACHI LOPEZ, Appellant,**

v.

**The STATE of Texas.**

**No. 2–85–204–CR.**

Court of Appeals of Texas,
Fort Worth.

June 11, 1986.

Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and Delonia A. Watson, Asst. Dist. Atty., Fort Worth, for appellee.

Before FENDER, C.J., and JOE SPURLOCK, II and HILL, JJ.

## OPINION

HILL, Justice.

Solomon Riachi Lopez appeals from the revocation of his probation. Upon the revocation, he was sentenced by the court to six years in the Texas Department of Corrections. He presents three grounds of error.

We affirm.

In ground of error number one, Lopez urges that the trial court erred in revoking his probation for the reason that the evidence was insufficient to support the revocation on the ground that he had committed the offense of burglary.

The burden of proof in a revocation proceeding is by a preponderance of the evidence. *Martin v. State*, 623 S.W.2d 391, 393 (Tex.Crim.App.1981). Where the sufficiency of the evidence to support the trial court's order is challenged, the evidence is viewed in a light most favorable to the trial court's findings. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex.Crim.App.1981). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Naquin v. State*, 607 S.W.2d 583, 586 (Tex.Crim.App.1980).

Appellate review of an order revoking probation is limited to a determination of whether the trial court abused its discretion. *Barnett v. State*, 615 S.W.2d 220, 222 (Tex.Crim.App.), *appeal dism'd*, 454 U.S. 806, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981). Where the State has failed to meet its burden of proof, the trial court abuses its discretion in issuing an order to revoke probation. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex.Crim.App.1984).

Proof of any one of the alleged violations of the conditions of probation by a preponderance of the evidence is sufficient to support the order of revocation. *Moses v. State*, 590 S.W.2d 469, 470 (Tex.Crim. App.1979).

The petition for revocation of probated sentence alleged that Lopez burglarized the home of Roger Webb on August 2, 1984.

J.W. Frady, Mr. Webb's next door neighbor in Richland Hills, testified that at 4:00 a.m. on August 2, 1984, he was awakened by dogs barking. When he looked out his window he could see "these guys" climbing out the window, carrying Mr. Webb's

"stuff" out and setting it in the yard. None of Mr. Webb's property had previously been in the yard. One was carrying the property to the door or window and handed it to the other one standing outside. Mr. Frady told his wife, who called the police, and the police arrived. Mr. Frady could not identify Lopez as one of the men. He stated that he identified the man that police arrested as being one of the men involved.

Amy Webb, Mr. Webb's daughter, testified that on the occasion in question she was staying with her grandparents while her parents were in Red River, New Mexico. She said she had been to the house at 9:30 or 10:00 p.m. to get a change of clothes, and that the house was locked when she went to her grandparents. She said the television and other property were in the house when she left. She said that Norma Frady called her about 4:30 or 5:00 a.m. to tell her what had happened. She said that she returned to the house to find most of their appliances out on the side yard next to the Frady house. She said that she had not given Lopez or anyone else permission to enter the house and had given no one permission to take the appliances and put them out on the yard. She said that to her knowledge Lopez had never been in the house nor had access to any of the property.

Roger Webb acknowledged that he was on vacation in Red River, New Mexico, at the time of the burglary, and that his daughter was staying with her grandparents in North Richland Hills at the time. He said that he had not given anyone but Amy permission to enter the house and had given no one permission to remove the appliances. He said that to his knowledge Lopez had never been in his house or had access to the television or any of the other property. On recall, he testified that he had purchased the television bearing Lopez's fingerprint about five years previously at K Mart.

Sergeant G.W. Worledge of the Richland Hills Police Department testified that he was dispatched to the residence at about 4:16 a.m. While heading southbound on Spruce Park, he discovered Mario Cartagena. A ring taken from the burglary was found in Mr. Cartagena's vehicle. A wallet was found in that vehicle which contained a dental appointment card, in the name of Solomon Riachi, a social security card bearing the name of Solomon L. Riachi, a picture of a little girl with the name Solomon Riachi Lopez on the back of it, and a group identification card with the name Solomon Riachi. The wallet itself had the name Solomon on one side and Riachi on the other. Worledge said that he took Cartagena right back to the residence in question.

Larry Valone, a detective with the City of Richland Hills, testified that on August 2, 1984 at 2633 Spruce Park in Richland Hills, he was able to obtain a fingerprint from the bottom edge of one of the televisions that was sitting out in the yard. He said that he put the fingerprint on a card and took it to the lab of Forensic Consultant Services. He identified Max Courtney as the head of the lab.

Max Courtney testified that he is the lab director for Forensic Consultant Services Laboratory. He said that Joe Maberry, an employee of the lab, had been a fingerprint comparison expert for eleven to twelve years. A business record of Mr. Maberry's examination was introduced which showed that Lopez's known fingerprint matched a fingerprint taken from the bottom of the Webb television by Officer Valone.

Lopez testified that he did not enter the house, that he went with Cartagena to see the things that were there on the ground. He said that Cartagena was trying to sell the items to him and handed some to him but he was not interested. He says he left because he saw that the police had arrested Cartagena. He said that Cartagena took him to the house from Oak Cliff, a neighborhood in south Dallas, after waking him at about 2:00 a.m. to tell him that he had some property in Tarrant County for sale. He related that no one else but he and Mario were there when he got there, and that the property was already out on the yard.

■ We find that the evidence was sufficient to establish that Lopez was one of the two men burglarizing the Webb household.

Lopez's reliance on the cases of *Bowen v. State,* 460 S.W.2d 421 (Tex.Crim.App.1970); and *McGarry v. State,* 82 Tex.Cr.R. 597, 200 S.W. 527 (Tex.Crim.App.1918) is misplaced. He asserts, based on these cases, that "[t]he mere presence of fingerprints at the scene of an offense, without further proof to connect the accused to the scene is insufficient to establish guilt of the burglary offense." First, Lopez's own testimony placing himself at the scene constitutes further proof in addition to the fingerprint found on the television. Under Lopez's testimony placing himself and Cartagena alone at the scene at the time of the offense as observed by Mr. Frady, no one else but Lopez could have been the second man involved in the burglary with Cartagena. Additionally, the fingerprints in *Bowen* and *McGarry* were located on objects which would have had wide public exposure whereas the television involved in this case had been in a private home for about five years. Lopez would realistically have had no other occasion to have access to the television. Finally, neither of the two cases cited by Lopez was a probation revocation case governed by the preponderance of the evidence test. We find that the evidence is sufficient to support the revocation of probation.

We overrule ground of error number one.

In grounds of error numbers two and three, Lopez asserts that the trial court erred in revoking his probation on a plea of true to the alleged violations of failure to report and failure to pay and that he was denied due process of law by the trial court's consideration of those allegations since they had been urged in a previous revocation motion. Since proof of any one of the alleged violations of the conditions of probation by a preponderance of the evidence is sufficient to support the order of revocation, we need not consider grounds of error two and three.

The judgment of revocation is affirmed.