**Byron Jay YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00904–CR.**

Court of Appeals of Texas,
Dallas.

May 28, 1987.

Jeanette L. Drescher, Dallas, for appellant.

Teresa Tolle, Dallas, for appellee.

Before WHITHAM, BAKER and LAGARDE, JJ.

BAKER, Justice.

Appellant, Byron Jay Young, was convicted of the offense of burglary of a habitation and assessed 25 years' confinement by the jury. He appeals on three points of error as follows: (1) there was insufficient evidence to prove appellant committed a burglary; (2) there was insufficient evidence to prove appellant had the intent to commit theft; and (3) the court improperly denied appellant's request for a charge on the lesser included offense of criminal trespass. We sustain points of error one and two, reverse the judgment of the trial court and render a judgment of acquittal.

Appellant was charged with burglary of a habitation under the provisions of TEX. PENAL CODE ANN. § 30.02. Under this section a person commits an offense when, without the effective consent of the owner, he enters a habitation with intent to commit a felony or theft. The indictment in this case charged appellant with the intent to commit theft. In points of error one and two appellant contends that there was insufficient evidence to prove commission of a burglary or that he had the intent to commit theft.

The sufficiency of evidence is measured by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, n. 12, 99 S.Ct. 2781, 2789, n. 12, 61 L.Ed.2d 560 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Crim. App.1984). This standard applies to cases involving circumstantial evidence as well as those involving direct evidence. *Denby v. State*, 654 S.W.2d 457, 464 (Tex.Crim.App. 1983); *see also Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983); and *Freeman v. State*, 654 S.W.2d 450 (Tex.Crim. App.1983). It is well-settled a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt. *Autry v. State*, 626 S.W.2d 758, 761 (Tex.Crim. App.1982); *Schershel v. State*, 575 S.W.2d 548, 550 (Tex.Crim.App.1979). Proof amounting only to a strong suspicion or mere probability is insufficient. *Autry*, 626 S.W.2d at 761; *Schershel*, 575 S.W.2d at 550. Finally, the rules of circumstantial evidence do not require that circumstances should, to a moral certainty, actually exclude every hypothesis that the act may have been committed by another person, but only that the hypothesis intended is a reasonable one consistent with the facts proved and the circumstances, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Carlsen*, 654 S.W.2d at 447. If the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reason- able doubt is not a rational finding. *Freeman*, 654 S.W.2d at 456.

The evidence viewed most favorably to the verdict shows that on May 2, 1986, the complaining witness, Monnie J. Martin, left her home in Duncanville, Texas at about 11:00 to 11:30 a.m. to go to the grocery store and post office. Upon her return at approximately 1:00 to 1:15 p.m. on the same day, while bringing the grocer- ies into her home, she ascertained that the window screen on the patio window had been cut, the storm window had been re- moved, and the patio window was shat- tered. The broken glass was on the inside of the room and in the same area she found a vase on the floor. At the time of her entry to her home she testified she heard a "racket" at the front of the home. Realiz- ing there had been a break-in to her home she immediately called the police. Officer Charles Yates of the Duncanville Police Department answered the call and accom- panied Mrs. Martin on a search of her home. No one was found inside the prem- ises and Mrs. Martin informed Officer Yates that the only thing she noticed out of order, other than the forced entry, was that her jewelry box looked as if it had been moved closer to the edge of the dresser from where she recalled it having been before. She also testified it looked to her as if someone had "picked around" in the jewelry box. Officer Yates attempted to secure the assistance of a criminal investi- gation unit in order to dust for finger- prints. Upon learning a unit was not avail- able, he contacted his supervisor for a fin- gerprint kit in order to accomplish this purpose on his own. Officer Yates met the supervisor in front of the complainant's home and, when returning to the house, it was called to his attention that the window at the side of the house was removed. Officer Yates went to the window at the outside of the house and observed that the shrubbery and adjoining flower bed had been disturbed and there was a hand print in the dirt adjacent to the area where the shrubbery had been broken. Officer Yates then returned to the interior of the home and went to that bathroom and checked the inside. He ascertained that the inside bath- room window was up, the storm window part had been taken out of the window and set to one side in the window casing, and the screen had been pushed out and was bent. Officer Yates then utilized his fin- gerprint kit and was able to collect two latent fingerprints from the storm window. At trial he testified that the print that he was able to lift was on the inside of the

storm window. He subsequently testified that he took another set of fingerprints from the window in the patio area which he identified as the point of entry. He identified the bathroom window as the point of exit. At the trial physical evidence investigator Stephens K. Evans, a fingerprint comparison "specialist" from the Dallas Sheriff's Office matched one print taken from the bathroom storm window with the left thumbprint of appellant.

The complaining witness, Mrs. Martin, testified that the appellant had done yard work for her and her husband on a good many occasions in 1985 and 1986, and that the last occasion for such work was about a week prior to the incident in question. She testified that the appellant had been permitted into the house on at least one occasion to use the bathroom. She testified that there were two bathrooms in the home but to her knowledge he had not used the master bathroom (the location where the point of exit was found). She also testified that the windows in her home had been cleaned in the latter part of March or the first part of April 1986 and that appellant was not part of the cleaning crew.

The appellant did not testify at the guilt/innocence or punishment phases of the trial.

Appellant argues in point one that the evidence is insufficient to prove that he is the individual that committed the burglary. Appellant contends that the evidence reflects that no one saw anyone enter or leave the house on the day in question. Appellant also points out the complainant's testimony was that he had been in the house to use the bathroom, and on at least that one occasion had been in the house for that purpose with her permission. Appellant also contends her testimony indicates that it was possible her husband had allowed the appellant in the house to use the bathroom on occasions that she was not present and he, therefore, could have had permission of the complainant's husband to enter the house. Appellant contends that on cross-examination by appellant's counsel Mrs. Martin admitted on the occasion that she herself permitted him into the house to use the bathroom, she did not go with him to see which bathroom he used, and did not know whether he used the master bathroom or not. Appellant further points out that the complainant admitted that nothing was missing from the house and that her only suspicion with regard to what might have happened in the house was the fact that she thought that her jewelry box had been moved from one place to another on the top of her dresser in her bedroom. Appellant also points out that the complaining witness identified the "racket" she heard at the front of the house as the sound of her neighbor working in her yard. (The appellant's hypothesis with respect to the identified print on the inside of the storm window was that it was made by him on an occasion when he was inside the premises by permission of either the complainant or her husband to use the bathroom.)

The State contends that the circumstances which point to the conclusion that the appellant is the guilty party are: (1) appellant's thumbprint found on the storm window; (2) the complainant's testimony that her jewelry had been "picked around" and that the jewelry box was moved closer to the edge of the dresser; (3) the complainant's testimony that she "heard a racket" at the front of her house upon her return home; and (4) signs of unlawful entry and exit which included one shattered patio window, two broken window screens, two removed storm windows, "broken" shrubbery outside the bathroom window and a handprint in the dirt.

Since the evidence of guilt in this case is circumstantial and other evidence adduced at trial raises an outstanding reasonable hypothesis, our analysis of the record in this case does not terminate after viewing the evidence in the light most favorable to the prosecution. If there is a reasonable hypothesis other than guilt of the accused raised by the evidence, then the essential elements of the crime cannot be found by any rational trier of fact beyond a reasonable doubt. *Dickey*, 693 S.W.2d at 388. The statement of facts reveals only three witnesses testified: the complaining witness, Mrs. Martin; the Duncanville patrol-

man, Charles Yates; and the fingerprint specialist, Stephens K. Evans, from the Dallas Sheriff's Department.

The complaining witness indicated that the "racket" she heard coming from the front of the house was the sound of her neighbor working in the yard and that she did not identify that sound with someone in her house. She also indicated that the only item she saw that had been disturbed was her jewelry box, which had been moved from one position to another on her dresser. When she saw the jewelry box at the time of the incident, the lid was closed. Upon looking inside the jewelry box, she noticed nothing was taken although the items looked like they had been "picked around." She further testified that she did not see anyone around her premises prior to the time she left for her errands or upon her return approximately two hours later. At the time of the search of her house by Officer Yates she noticed nothing else had been disturbed in any other part of the house nor was anything missing. She further testified that she had used the jewelry box approximately two or three days before May 2, 1986, and on that occasion had put an old watch into the box. She also testified that appellant had been fairly regular as their yard man and had mowed the yard on a number of occasions, the last of which was approximately a week before the May 2nd incident. She confirmed that he had been in the house with her permission to use the bathroom and that she did not know which bathroom he used, and that he could have used the bathroom where the window was located that was the point of exit. She also testified it might have been possible he had used the bathroom on other occasions while she was not present, pursuant to her husband's permission. She also testified that all of the windows in her home, including the storm window which was the point of exit, had been cleaned by window cleaners in either the latter part of March or the first part of April. She testified that the appellant had used the bathroom after the occasion of the windows being cleaned.

Officer Yates, during cross-examination by appellant's counsel, testified that he could not determine at what time the fingerprints had been left on the window or the length of time they had been on the window. He also testified he did not know how long fingerprints would remain on windows.

Physical evidence expert Evans testified it was possible that the fingerprint that was lifted from the storm window could have been made at a time prior to the day of the incident when the print was taken by Officer Yates. Evans also testified that in his training he was not given any instructions on how long fingerprints are able to last and still be taken because there is no exact way to determine the life of a latent print.

Under the test of sufficiency of the evidence enunciated above, every circumstantial evidence case must necessarily be tested by its own facts to determine whether the sufficiency of the evidence supports the conviction. *Earnhart v. State*, 575 S.W.2d 551 (Tex.Crim.App.1979).

Appellant's vigorous challenge to the sufficiency of the evidence to sustain the conviction is based upon his contention that the *only* evidence connecting him with the alleged burglary of the premises was the fingerprint found on the inside of the storm window at the apparent point of exit. As previously indicated, his position and contention is that this is not sufficient to sustain his conviction because of the fact of other reasonable hypotheses. The State, to the contrary, contends that the fingerprint of the appellant, which *necessarily must have been made at the time of the burglary*, is sufficient to sustain the conviction without further evidence of identification, and that the evidence with regard to the jewelry box is sufficient to show intent to commit theft (Emphasis added). The State relies upon *Phelps v. State*, 594 S.W.2d 434 (Tex.Crim.App.1980); *Nelson v. State*, 505 S.W.2d 271 (Tex.Crim.App.1974); *LeBlanc v. State*, 424 S.W.2d 434 (Tex.Crim.App. 1968); and *Wheat v. State*, 666 S.W.2d 594 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd), in support of its position on the appellant's first point of error; and relies on *Ortega v. State*, 626 S.W.2d 746 (Tex. Crim.App.1982); *Stearn v. State*, 571 S.W.2d 177 (Tex.Crim.App.1978); and *Hardage v. State*, 552 S.W.2d 837 (Tex.

Crim.App.1977) with respect to appellant's second point of error. Each of these cases has been reviewed carefully and are found to be distinguishable.

In *Phelps,* the only evidence linking the appellant to the offense was two latent fingerprints found on the door jamb of the bedroom closet of the home of the complaining witnesses. However, in *Phelps,* there was no evidence that appellant had been on the premises prior to the offense or that the premises previously had been burglarized. *Phelps,* 594 S.W.2d at 436. In *Nelson,* two fingerprints identifying the appellant were found in the inside of the window that had been broken and where entry had been made. However, the evidence showed that the appellant had never been seen on the premises before and there was no evidence that the appellant had ever been there before the burglary. *Nelson,* 505 S.W.2d at 273. In *LeBlanc,* the same question arose with respect to the appellant's fingerprints in that case. There was no evidence that the appellant had ever visited the complaining witness in his apartment or that appellant was seen there prior to the day of the burglary. Additionally, a television set taken at the time of the burglary was recovered from the residence of the appellant three days after the alleged burglary. *LeBlanc,* 424 S.W.2d at 435. In *Wheat,* the victim and the appellant had been acquaintances for several months and although the appellant had been in the victim's apartment four or five times, the victim testified positively that the appellant had never been in or around the particular cabinet from which the stolen property was taken. *Wheat,* 666 S.W.2d at 595.

On the issue of intent, in *Ortega,* the appellant was actually seen by a uniformed police officer attempting to pry open the front door of the victim's home. *Ortega,* 626 S.W.2d at 749. In *Stern,* although nothing had been taken from the premises the appellant in that case was discovered in the kitchen of the victim's residence and upon discovery fled immediately. *Stern,* 571 S.W.2d at 177. Finally, in *Hardage,* the appellant was found in "unexplained possession of some of the property recently stolen from a burglarized house."

The fingerprints on the storm window are evidence of appellant's identity, and that he had been at that window of the house. However, there is no evidence from any of the three witnesses who testified at the trial that that fingerprint was necessarily made at the time of the burglary. A reasonable hypothesis from the evidence in the record is that the latent fingerprint identifying the appellant could have been left there by appellant on another occasion. *See Bowen v. State,* 460 S.W.2d 421 (Tex. Crim.App.1970); *Dues v. State,* 456 S.W.2d 116 (Tex.Crim.App.1970); *Caudillo v. State,* 318 S.W.2d 891 (Tex.Crim.App.1958); *Weir v. State,* 139 Tex.Cr.R. 33, 138 S.W.2d 805 (1940); and *McGarry v. State,* 82 Tex. Cr.R. 597, 200 S.W. 527 (Tex.Crim.App. 1918).

This connection by the fingerprint identity, when weighed with the hypothesis presented by the evidence, amounts only to a mere probability or strong suspicion, and is insufficient to prove beyond a reasonable doubt that appellant is guilty as charged. We hold that the circumstantial evidence is insufficient to exclude every reasonable hypothesis except the guilt of the appellant. *See Dickey,* 693 S.W.2d at 390, and *Wilson v. State,* 654 S.W.2d 465 (Tex.Crim.App. 1983).

Appellant has raised an additional point of error. However, due to our disposition of the case we find it unnecessary to consider this third point of error.

In cases where the evidence is insufficient to support a conviction, double jeopardy safeguards preclude further prosecution of the cause. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Windham v. State,* 638 S.W.2d 486 (Tex.Crim.App. 1982).

Therefore, the trial court's judgment is reversed and a judgment of acquittal is rendered.